UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KENNETH LAVENDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01759-TAB-TWP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT

### I. Introduction

Plaintiff Kenneth Lavender has a long history of bilateral knee problems, with several past surgeries. He remained working while receiving injections from the Veterans Administration for pain in the right knee, until he further injured it at work. After the injury, Lavender received a worker's compensation settlement through his employer and required arthroscopic surgery to repair a torn meniscus. His recovery was complicated by a blood clot in his leg, but with physical therapy he was released back to work at maximum medical improvement with a 10% permanent partial impairment and permanent postural restrictions. More than a year after the injury, Lavender filed for disability insurance benefits and supplemental security income from the Social Security Administration asserting a complete inability to engage in substantial gainful activity. While awaiting his hearing with an Administrative Law Judge, Lavender suffered a second meniscus tear in the same knee, which again required arthroscopic surgery.

Following SSA's denial of his applications for benefits, Lavender filed this suit asserting that the ALJ's conclusion that he could sustain the ability to stand and walk most of the day in

order to complete light work is not supported by substantial evidence. He further asserts that the ALJ's decision to give limited weight to the opinion of a treating specialist and the Appeals Council's decision that evidence submitted after the hearing was not new and material are contrary to the regulations. [Filing No. 17.] As explained below, the ALJ's decision is far from perfect, but nevertheless, the Court denies Lavender's request to remand his claims and affirms the ALJ's decision.

## II. Background

The SSA denied Lavender's DIB and SSI applications both initially and upon reconsideration. The ALJ held a hearing and issued a decision finding that Lavender was not disabled. The ALJ found Lavender had the following severe impairments: "osteoarthritis of the bilateral knees, obesity, and diabetes." [Filing No. 13-2, at ECF p. 32; R. at 31.] In light of the entire record, the ALJ found that Lavender retained the residual functional capacity to perform a reduced range of light work including the ability to stand and walk for six hours out of an eight hour day with the opportunity to alternate positions for one to two minutes every thirty minutes. The ALJ's RFC finding stated that Lavender "can never climb, ladders, ropes, or scaffolds; he can perform all other postural activities on an occasional basis . . . ." [Filing No. 13-2, at ECF p. 33; R. at 32.] With the assistance of a vocational expert, the ALJ found that Lavender was unable to return to his past relevant work as a maintenance mechanic based on the RFC finding. However, the VE testified based on a consideration of Lavender's age, education, work experience, and RFC, that he retained the ability to perform other light jobs that exist in significant numbers in the national economy, including representative occupations as a survey worker clerk, information clerk, and cashier.

Lavender appealed the ALJ's March 15, 2016, decision to the Appeals Council and submitted additional medical evidence, consisting of an April 7, 2016, VA compensation and pension assessment. [Filing No. 13-15, at ECF p. 43-56; R. at 1081-94.] The Appeals Council denied Lavender's request for review and this suit followed.

### III. Discussion

#### A. The ALJ's RFC Finding

Lavender takes issue with the ALJ's RFC finding, specifically arguing the ALJ's conclusion that he would be capable of standing and/or walking for a total of six hours in an eight-hour workday is not supported by substantial evidence. When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). To determine whether substantial evidence exists, the Court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999) (internal quotations omitted). Lavender argues that the standing and walking conclusion in particular is inconsistent with a history of arthritis, meniscal tears, multiple surgeries including two since the alleged onset date, numerous injections, an antalgic gait even with a cane, objective diagnostic imaging, crepitus, limited range of motion, and complaints of pain and weakness, all predominantly involving Lavender's knees. However, the Court does not agree under the deferential standard that the ALJ's conclusion is unsupported.

3

First, the ALJ's decision adequately sets forth the potentially conflicting evidence that Lavender cites, including the treatment history, complaints, and objective testing. [Filing No. 13-2, at ECF p. 34; R. at 33.] While the "ALJ need not discuss every piece of evidence in the record . . . the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citation omitted). The Court cannot conclude that the ALJ was not aware of the evidence that Lavender offers and otherwise does not see any significant omissions in the ALJ's discussion of the evidence.

Second, the ALJ supports her conclusion by noting that Lavender had a good response to treatment, including both surgeries during the period at issue.[1] The ALJ cited findings from the consultative examination performed between the two surgeries, indicating "normal posture and an antalgic gait with good stability, fair speed, and fair sustainability (Ex. 5F/4)." [Filing No. 13-2, at ECF p. 35; R. at 34 (citing Filing No. 13-9, at ECF p. 88; R. at 583.] The ALJ also cited to some of the most recent evidence of record, an examination following the second surgery that indicated normal gait and station with no focal weakness. [Filing No. 13-15, at ECF p. 39; R. at 1077.] Despite the ALJ offering limited evidentiary support by citation to the record showing improvement, the Court finds adequate relevant evidence that a reasonable mind could come to her conclusion, including the two examinations and additional evidence detailed later in this order in connection with specific arguments.

Third, the ALJ gave great weight to the opinions of two state agency medical consultants who reviewed a partial record and determined that Lavender was capable of a reduced range of light work consistent with the ALJ's RFC. [Filing No. 13-2, at ECF p. 36; R. at 35 (citing Filing

---

[1] The Court is aware that Lavender has a history of multiple knee surgeries prior to the period of issue. However, references in this order will refer to the first and second surgery within the period of issue for purposes of clarity in describing the relevant timeline.

4

No. 13-3, at ECF p. 15-17; R. at 89-91; Filing No. 13-3, at ECF p. 37-39; R. at 111-13).] The ALJ noted that their opinions were consistent with the updated record as a whole, including treatment that had been "largely beneficial." [Filing No. 13-2, at ECF p. 36; R. at 35.] The Court does not agree with Lavender that the ALJ never explained the evidence that supported her RFC finding.

Lavender's general argument is little more than an invitation to the Court to reweigh the evidence. Even if the Court agreed that the evidence Lavender suggests conflicts with the ALJ's RFC finding, or was persuasive in establishing a disability, the governing standard precludes relief. Indeed, the Seventh Circuit has recognized that "challenges to the sufficiency of the evidence rarely succeed" under this standard. *Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005). The Court does not find the ALJ's conclusion to lack substantial support. However, the Court will address more specific arguments that Lavender makes in connection with his general argument above.

### B. Pain Medication

Lavender takes issue with the ALJ's conclusion that his refusal to take pain medication undermined his allegations regarding the severity of his pain. In support, Lavender relies on the Seventh Circuit precedent in *Childress,* "[s]imilarly, it was wrong of the administrative law judge to fault Childress for not taking strong opioids for pain, when his medical conditions did not require them and, as is now well known, opioids can be very dangerous." *Childress v. Colvin*, 845 F.3d 789, 793 (7th Cir. 2017). *Childress* involved a challenge to an ALJ's credibility finding, an argument that Lavender does not directly make here. *Id.* at 790. The claim also involved a whole host of predominantly cardiac and lung impairments, though it did also include complaints of leg pain. *Id.* at 790-91.

5

Lavender's argument again challenges the ALJ's decision under a deferential standard, albeit implicitly this time. An ALJ's credibility determination will not be overturned unless "patently wrong." *Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir. 1995); *see also Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008) ("[i]t is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong'"); *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) ("[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed.").

Lavender does have a point. There is more than one conclusion to draw from Lavender refusing long-term use of narcotic pain medication. The record does not clearly indicate whether the reason was due to intolerable side effects or the potentially dangerous habit forming effects. The record indicates that even after maximum medical improvement following the first knee surgery, Lavender still complained of ongoing pain that his treating specialist attributed to underlying arthritis not addressed by the treatment for his injury. Lavender also received injections in his knee for pain during the period at issue. Even the visit the ALJ cites showing that he was no longer taking narcotics or non-steroidal anti-inflammatory drugs ("NSAIDS") lists the chief complaint necessitating the visit to be bilateral knee pain and resulted in Lavender being prescribed bilateral heal wedges and a trial of different NSAIDS (as previous medications of this class had caused side effects.) [Filing No. 13-15, at ECF p. 36; R. at 1074.] The record indicates that some level of pain clearly remained.

Still, the ALJ's conclusion is not unfounded. At the previous outpatient visit, Lavender was no longer taking opiates after the second knee surgery because his pain was improving. [Filing No. 13-15, at ECF p. 37; R. at 1075.] More important, unlike in *Childress*, in which the ALJ's reliance on a claimant not taking pain medication was just one of a number of unsupported

or unreasonable conclusions supporting a credibility determination, the ALJ further bolstered her credibility determination here with other evidence of improvement following the surgeries, including the examination findings. Moreover, Lavender testified at the hearing that he was regularly taking a pain reliever, which does appear to be contradicted by the medical evidence the ALJ cited. [Filing No. 13-2, at ECF p. 66; R. at 65.] To the extent the ALJ's conclusion was unreasonable in light of the dangers of opioid addiction and evidence of Lavender seeking pain relief by other means, the Court does not find the totality of the ALJ's credibility determination to be patently wrong, and Lavender has not sufficiently developed an argument to the contrary.

Similarly, Lavender argues that the ALJ's failure to inquire into the inconsistency between his allegations of pain and his refusal to take pain medication "is harmful error." [Filing No. 17 (citing *Beardsley v. Colvin*, 758 F.3d 834 (7th Cir. 2014)).] However, the Court finds *Beardsley* inapplicable. The ALJ did inquire into his complaints of pain at the hearing and Lavender testified that he *does* take pain medication regularly. The ALJ could have discovered the discrepancy between his testimony and the medical record after the hearing in preparation of the written decision. At any rate, the ALJ did not have any duty to ask him his reasons for not liking narcotics based on his actual testimony that included he was taking a pain reliever.

### C. Use of a Cane

Lavender also asserts harmful error arising from the ALJ's discussion of his use of a cane. In support, Lavender cites to Seventh Circuit precedent. "Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Again, *Parker* involved a challenge to an ALJ's credibility finding, which Lavender does not directly raise in

this suit. Regardless, the Court does not read the ALJ's decision as suggesting the fact that Lavender used a cane without a prescription was in any way suspicious or that it was even a factor used in assessing Lavender's credibility. The ALJ was well aware of the evidence showing the cane use. The reference that Lavender takes issue with was given in the context of the ALJ summarizing her RFC findings, which did not include the need for the use of cane (which Lavender rightly points out would be material to the determination of disability in his case). The ALJ reasoned that while Lavender "used a cane at the hearing and after his knee surgeries, there is no prescription for the cane in the medical record nor is there a statement in regards to the cane being medically necessary." [Filing No. 13-2, at ECF p. 35; R. at 34.]

Contrary to Lavender's argument, the ALJ is actually required to consider such evidence in assessing the RFC. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p; *see also* 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings are binding on all components of the Social Security Administration."). Before addressing the lack of any consistent standard among the circuits as to the precise requirements of the medical documentation necessitated under the ruling, the Seventh Circuit described the difference between evidence of use and necessity in *Tripp*:

> In our view, the record adequately supports the finding of no medical necessity. The record is replete with references to Tripp's use of "crutches," "a crutch," or "a cane," but these mentions are traceable to his self-reports and to physicians' observations that he *presented* with an assistive device. Even the statement of Dr. Motiani, who in his letter to the state agency asserted matter-of-factly that Tripp "does need a crutch," lacks the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by Tripp.

8

*Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (emphasis in original). Lavender "maintains that the objective and clinical findings summarized above indicate the cane is medically necessary." [Filing No. 17.] However, Lavender does not present any supporting medical opinion from a source qualified to make that determination. Lavender also does not present any evidence that was before the ALJ that at all conflicts with the ALJ's reading of the evidence as lacking either a prescription or some other statement of medical necessity. The ALJ's consideration of the evidentiary deficit does not constitute error.

### D. Knee Replacement Surgery

Lavender also makes a fairly convoluted argument that the ALJ's analysis of his need for knee surgery was harmful error, asserting the ALJ's discussion was not complete and that she "essentially played doctor." [Filing No. 17 (citing *Minnick v. Colvin,* 775 F.3d 929 (7th Cir. 2015).] However, this argument lacks merit. To begin with, in support of her credibility determination, the ALJ discussed that Lavender "was found to not be a candidate for a knee replacement due to the lack of a [sic] severity of his osteoarthritis (Ex. 11F/81)." [Filing No. 13-2, at ECF p. 35; R. at 34.] The reason the ALJ addressed the issue under credibility appears to be because Lavender testified that he had been told by the provider that fixed his meniscus tear that his knee was so bad that he needed a knee replacement, but that he was too young for the procedure. [Filing No. 13-2, at ECF p. 53; R. at 52; Filing No. 13-2, at ECF p. 67; R. at 66.] However, Lavender does not present any direct evidence in the medical record that he was ever told he needed a knee replacement. Rather than playing doctor, the ALJ relied on a doctor's statement that Lavender was not a candidate for replacement due to lack of severe osteoarthritis shown on an x-ray. [Filing No. 13-13, at ECF p. 82; R. at 897.] Lavender's argument confuses the issue by citing references to him needing to get his diabetes under better control in order to

have the second knee surgery. The ALJ was well aware of the arthroscopic surgery for the torn meniscus. The Court does not follow how Lavender feels the record implicitly reveals that he does need a knee replacement in the first instance. The ALJ did not err by failing to divine the same, and her reliance on the medical evidence was proper.

### E. Treating Specialist Opinion

Perhaps Lavender's strongest argument is that the ALJ erred in giving limited weight to the opinions of his treating orthopedic surgeon, Dr. Czarkowski. Lavender's argument invokes the treating physician rule. In *Scott,* the Court described that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Id.* (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Id.* at 740 (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Id.* (citing *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 404.1527(c)).[2]

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this order should be considered to refer to the appropriate parallel

10

> The decision offers in relevant part:
>
> > The undersigned gives limited weight to the opinion of Robert Czarkowski, M.D. (Ex. 6F/16, 17, 20, 23). He opined as to the claimant's limitations in the months following his surgery, noting significant recovery and a reduction in the claimant's degree of limitation. Notwithstanding, his opined restrictions are inconsistent with the record as a whole. He opined on several occasions that the claimant could not kneel, squat, or climb (Ex. 6F/5, 16, 20, 23). He further opined that the claimant could perform a sitting job with occasional standing and walking as tolerated. The objective medical evidence does not support this degree of limitation. Although the claimant was found to have an antalgic gate [sic], he was noted for having good stability, fair speed, and fair sustainability (Ex. 5F/4). Additionally, the record show[s] that the claimant made significant improvement, as was noted by Dr. Czarkowski (Exs. 6F/4, 8, 17). Accordingly, the opinion of Dr. Czarkowski is given limited weight.

[Filing No. 13-2, at ECF p. 36; R. at 35.] The ALJ's discussion of the evidence is not ideal; it lumps two different medical source statements together and gives the same explanation for both about the weight they were given.

On the one hand, there is Dr. Czarkowski's statement that Lavender could perform a sitting job with occasional standing and walking as tolerated. On April 10, 2013, shortly after the injury that interrupted Lavender's ability to work, Dr. Czarkowski performed the arthroscopic surgery to repair his torn meniscus. [Filing No. 13-10, at ECF p. 34-35; R. at 620-21.] On May 14, 2013, Dr. Czarkowski, who also provided the follow-up treatment during the recovery phase after the surgery, opined work restrictions that Lavender could perform a sitting job with occasional standing and walking as tolerated and no kneeling, squatting, or climbing. [Filing No. 13-10, at ECF p. 21; R. at 607.] The ALJ's explanation that the restrictions are inconsistent with the record as a whole showing significant improvement is not the most direct way of explaining why this particular restriction is not supported. The better explanation is that,

---

provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

looking at Dr. Czarkowski's own treatment notes, it is clear that this particular restriction was not intended to be permanent. Subsequent statements from Dr. Czarkowski give progressively less restrictive limitations concerning Lavender's ability to stand and walk. On June 28, 2013, Dr. Czarkowski increased the amount of standing and walking to four hours in an eight-hour day, with four hours of sitting. [Filing No. 13-10, at ECF p. 14; R. at 600.] Subsequent statements removed any restrictions on standing and walking, keeping only the postural restrictions in place. The treatment records support that the standing and walking limitation cited by the ALJ was intended to be temporary during the recovery phase from surgery and is not a long-term statement of Lavender's ability to work in conjunction with the durational requirement of the disability program. The ALJ's explanation, though somewhat unclear, is supported that limited weight could be given this particular statement based on Lavender's improved capacity with normal recovery from surgery.

On the other hand, there is Dr. Czarkowski's statement that "Mr. Lavender was released from my care on 8/19/13 and returned to work with permanent restrictions of no kneeling, squatting or ladder climbing and he could use stairs in a limited fashion as tolerated." [Filing No. 13-10, at ECF p. 4; R. at 591.] The ALJ's explanation for giving this statement limited weight makes little sense. The evidence the ALJ cited pertaining to the sustainability of Lavender's gait would be relevant in contradiction with a reduced capacity to stand and walk, but does not apply in the context of these postural restrictions. The ALJ also cites to evidence of improvement in Dr. Czarkowski's records, including a citation to the very same page that he gave these permanent restrictions. Dr. Czarkowski was well aware of the improvement in Lavender's condition reflected in his own treatment records. Nonetheless, Dr. Czarkowski

12

opined permanent postural restrictions that do not appear at all unreasonable in light of the overall record, being fairly consistent with chronic knee problems.

Moreover, the ALJ failed to address any of the factors used to weigh opinions, which would generally suggest that Dr. Czarkowski's opinion was deserving of considerable deference, as a treating, examining specialist. *See* 20 C.F.R. § 404.1527(c). The ALJ failed to provide any evidence in the explanation of the weight that was given Dr. Czarkowski's statement that contradicts the restrictions. Furthermore, the Court is unable to determine from that explanation if the ALJ was even aware that Dr. Czarkowski was giving both temporary and permanent restrictions during the course of Lavender's treatment, which seems to be a pretty important consideration. The ALJ's explanation is deficient and the Court agrees that it is erroneous.

The Commissioner argues that any error with respect to the weight given Dr. Czarkowski's opinion is nevertheless harmless. The Seventh Circuit has explained the standard by which error can be ignored by the Court:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir.2010). That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be. We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation. We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

*McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

The Commissioner presents evidence that the representative occupations the ALJ found Lavender could perform do not include postural requirements that conflict with Dr. Czarkowski's permanent postural restrictions. The Dictionary of Occupational Titles indicates

13

that for all of the representative jobs that kneeling, stooping, crouching, and climbing are "not present." *See* Information clerk, DICOT 237.367-018 (G.P.O.), 1991 WL 672187 (Jan. 1, 2016); cashier II, DICOT 211.462-010 (G.P.O.), 1991 WL 671840 (Jan. 1, 2016); and survey worker clerk, DICOT 205.367-0544, 1991 WL 671725 (Jan. 1, 2016). Lavender did not respond to this particular argument. However, it appears to be pretty straightforward. In light of the evidence, the Court finds that application of the harmless error doctrine is appropriate. The Court has great confidence that even if the ALJ had given Dr. Czarkowski's permanent postural restrictions controlling weight and adopted them in her RFC finding, the DOT would indicate that the restrictions would not preclude Lavender from performing the other work the ALJ found him capable of at Step Five. Accordingly, despite the ALJ's erroneous explanation of the weight given Dr. Czarkowski's opinion, the Court declines to remand the claim for further proceedings. Doing so would be unnecessary.

**F. Additional Evidence Submitted to the Appeals Council**

Lavender's final argument is that the Appeals Council erred in determining that evidence submitted in connection with his appeal of the ALJ's decision was not new and material to his claim. The evidence that Lavender argues is new and material to his claim is a VA compensation and pension report, based on an examination, which was dated April 7, 2016, just two weeks prior to the date of the unfavorable decision.

The issue of whether the Appeals Council properly rejected an appeal is distinct from whether an ALJ's decision is supported by substantial evidence. *Farrell v. Astrue,* 692 F.3d 767, 770-71 (7th Cir. 2012). To review additional evidence, the Appeals Council must determine whether the evidence is new and material and then:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

> [ALJ] hearing decision. The Appeals Council shall evaluate the entire record
> including the new and material evidence submitted if it relates to the period on or
> before the date of the [ALJ] hearing decision. It will then review the case if it
> finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of
> the evidence currently of record.

20 C F.R. § 404.970(b). A district court may review *de novo* whether the Appeals Council made an error of law in applying this regulation. *Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997). If an error of law exists, remand may be appropriate; otherwise, "the Council's decision whether to review is discretionary and unreviewable." *Id.* While this Court cannot use evidence that was not before the ALJ to reevaluate the ALJ's factual findings, remand may still be appropriate if the Appeals Council made an error of law. *Farrell,* 692 F.3d at 770-71. To be added to the administrative record on appeal, evidence must qualify as both new and material. Evidence is considered new if it is new to the administrative record. *Farrell,* 692 F.3d at 771. New evidence is material if it relates to the period on or before the date of the ALJ hearing and there is a "reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt,* 395 F.3d at 742. Evidence is material only if the evidence "speaks to the [claimant's] condition at or before the time of the administrative hearing." *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

The Court finds the language of the Appeals Council order, which listed the evidence as received, to track the language of 20 C F.R. § 404.970(b) almost precisely (cited above), specifying what the Appeals Council will do when it *does* receive new and material evidence relating to the period at issue:

> In looking at your case, we considered the reasons you disagree with the decision
> and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings, or
> conclusion is contrary to the weight of the evidence currently of record. We found

15

that this information does not provide a basis for changing the Administrative Law Judge's decision.

[Filing No. 13-2, at ECF p. 6; R. at 5.] The Seventh Circuit has explained that "if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was 'contrary to the weight of the evidence'—the Council's decision not to engage in plenary review is 'discretionary and unreviewable.'" *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015) (citing *Perkins,* 107 F.3d at 1294). In such a case, the Appeals Council's decision to not engage in plenary review would render the ALJ's decision the only reviewable decision of the Court. *Id.*

However, as the Commissioner points out, the language used by the Appeals Council appears to be nearly identical to language that the Seventh Circuit has found to be ambiguous:

> Here, the Appeals Council's decision says that it "considered ... the additional evidence ... [and] found that this information does not provide a basis for changing the [ALJ's] decision."
>
> We note that this text, which often appears in orders of the Appeals Council rejecting plenary review, is not as clear as it might be. On the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result.

*Farrell,* 692 F.3d at 771. Following precedent, the Court will reach the limited question as to whether the evidence qualifies as material, such that there is a "reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt,* 395 F.3d at 742.

The Court finds that the evidence is not material under the standard. Lavender argues that the evidence shows new problems with his left knee. However, the ALJ found and considered a severe impairment in the bilateral knees. Lavender also asserts that the evidence

contradicts the ALJ's findings that he could stand and walk a total of six hours in an eight hour workday and a cane was not medically necessary. The examination itself does not appear to be materially different than others considered by the ALJ in the decision. [Filing No. 13-15, at ECF p. 43-56; R. at 1081-94.] The examination did reveal abnormal range of motion of in both knees. However, the examiner did not believe the finding to result in any functional loss. Muscle strength was found to be full. There was no evidence of joint instability in either knee. It is true that the report reflects that Lavender reported using a cane regularly. However, given the examination findings being negative for weakness and instability, another report of cane use, even if it does provide additional clarity on the amount of use, does not change the analysis detailed above. There is still no indication that a cane is medically necessary. Moreover, when the source was asked to comment on the impact on Lavender's ability to perform any type of occupational tasks, "such as standing, walking," the provider only indicated that his ability to climb stairs and ladders would be compromised. [Filing No. 13-15, at ECF p. 54; R. at 1092.] Accordingly, the new evidence is not sufficient to require remand.

### IV. Conclusion

For the reasons set forth above, the Court finds no legal basis to reverse the ALJ's decision that Lavender was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 5/17/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

All ECF-registered counsel of record via email